IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 20-0143 |
| JEREL ANDRE WILLIAMS | : | |

## GOVERNMENT'S GUILTY PLEA MEMORANDUM

### I.

### INTRODUCTION

Defendant JEREL ANDRE WILLIAMS has been charged in an 11-count Superseding Indictment with eight counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts One through Eight), one count of mail fraud, in violation of 18 U.S.C. §§ 1341 and 3559(g) (Count Nine), and two counts of filing a false tax return, in violation of 26 U.S.C. § 7206(1) (Counts Ten and Eleven).

The defendant has signed a plea agreement, pursuant to which he will plead guilty to Counts Seven, Eight, and Ten of the Superseding Indictment in this case and agree to not contest forfeiture as set forth in the notice of forfeiture charging criminal forfeiture under 18 U.S.C. § Section 981(a)(1)(C) and 28 U.S.C. § 2461. Pursuant to the terms of the plea agreement, the government will agree to dismiss Counts One through Six, Nine, and Eleven at the time of sentencing, provided the defendant complies with his obligations under the plea agreement. A copy of the plea agreement is being provided concurrently herewith.

II.

## MAXIMUM PENALTIES

A.     **Mail Fraud (Counts Seven and Eight)**

The maximum sentence for each violation of 18 U.S.C. § 1341 (mail fraud) as charged in Counts Seven and Eight, to which the defendant is pleading guilty, is 20 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment.

B.     **Filing a False Tax Return (Count Ten)**

The maximum sentence for the violation of 26 U.S.C. § 7206(1) (filing a false tax return) as charged in Count Ten, to which the defendant is pleading guilty, is three years' imprisonment, a one-year period of supervised release, a fine of $250,000, and a $100 special assessment.

C.     **Total Maximum Sentence**

Therefore, the total maximum sentence for the three counts to which the defendant is pleading guilty (Counts Seven, Eight, and Ten of the Superseding Indictment) is 43 years' imprisonment, a three-year period of supervised release, a $750,000 fine, and a $300 special assessment. Full restitution also shall be ordered. Forfeiture of all proceeds from the scheme to defraud, as reflected and charged in Counts Seven and Eight, also may be ordered.

III.

## ELEMENTS OF THE OFFENSES

A.     **Mail Fraud (18 U.S.C. § 1341)**

To establish mail fraud, in violation of 18 U.S.C. § 1341, as charged in each of Counts Seven and Eight, the government must prove the following essential elements beyond a reasonable doubt:

       1.     The defendant knowingly devised a scheme to defraud, that is, to deprive

another of money or property by fraud, including by false or fraudulent pretenses, representations or promises, or omissions, concerning a material fact;

    2.    The defendant did so with the intent to defraud; and

    3.    That in advancing, furthering, or carrying out the scheme, the defendant used the mails (or a private or commercial interstate carrier), or caused the mails (or a private or commercial interstate carrier) to be used.

Note:   The government is not required to prove that the defendant actually mailed anything or intended that the mails would be used to further, or to advance, or to carry out the scheme. However, the government must prove beyond a reasonable doubt that the mails (or a private or commercial interstate carrier) were, in fact, used in some manner to further, or to advance, or to carry out, the scheme to defraud. The government must also prove either that the defendant used the mails, or knew the use of the mails (or private or commercial interstate carrier) would follow in the ordinary course of business or events, or should reasonably have anticipated that the mails (or private or commercial interstate carrier) would be used. *See, e.g.*, 3rd Circuit Model Jury Instruction 6.18.1341-5.

**B.**    <u>**Filing a False Tax Return**</u>

To establish the offense of filing a false tax return, in violation of 26 U.S.C. § 7206(1), as charged in Count Ten, the government must prove the following essential elements beyond a reasonable doubt:

    1.    The defendant made or subscribed an income tax return or statement or other document;

    2.    The tax return contained a written declaration that it was made under the penalties of perjury;

        3.       The tax return was false regarding a material matter;

        4.       The defendant did not believe the tax return was true and correct as to every material matter; and

        5.       The defendant acted willfully.

Third Circuit Model Jury (Criminal) Instructions 6.26.7206.

## IV. FACTUAL BASIS FOR PLEA

If this case were to proceed to trial, the government would prove the following, among other things:

Beginning in approximately July 2016 and continuing until at least January 2018, the defendant devised a scheme to defraud Cisco Systems, Inc. (hereinafter "Cisco") and obtain merchandise from Cisco by fraud through a series of fraudulent representations, including that products that he and co-schemer Takandryia Latrice Cage, charged separately, owned were defective and covered by warranties and that the products had to be replaced, when in reality the defendant and Cage did not own the supposedly defective products they were seeking to replace. The defendant and Cage promised to return the supposedly defective products after they received the replacements, but they did not do so because they did not own the supposedly broken products to begin with.

In order to make the scheme work, the defendant had to pretend to be different people, as Cisco would not have continued to ship replacement products to the defendant after he repeatedly claimed to own broken items and did not return them. Therefore, the defendant created a series of false identities and false company names, and claimed to be someone else who worked at a fictitious company. In order to deceive Cisco into believing they were dealing with other people and not the defendant, the defendant created new, false email addresses that

purported to belong to a different person, sometimes by first registering a false domain name, such as "alphateamcomp.org," and then creating a new email address tied to that domain name, such as "mark@alphateamcomp.org." The defendant also utilized addresses around the country to receive the items and traveled to those addresses to pick up the replacement items shipped by Cisco. In this manner, the defendant was able to hide his true identity and mislead Cisco into believing that the email addresses used to make the warranty claims were associated with other persons who worked for various companies.

In order to get the replacement items, the defendant also had to convince Cisco that he owned an actual Cisco item identified by serial number that was under warranty and defective. The defendant figured out a way to obtained and ascertained serial numbers for Cisco computer hardware that he did not own or possess. Then, the defendant and Cage contacted Cisco and initiated numerous false warranty claims via telephone calls, emails, and online chats by providing the legitimate serial numbers for Cisco products that they did not own or possess, as well as the false names, false email addresses, false shipping addresses, and other false information, and by falsely claiming that they and/or the false companies they claimed to work for were the owners of the items in question and that the Cisco hardware in question was not working properly. The defendant and Cage provided the customer service representatives for Cisco with descriptions of the supposed problems with the hardware that the defendant knew would prevent the customer service representatives from solving the problems through troubleshooting and would necessarily require the replacement of the supposedly faulty items.

The defendant and Cage then provided Cisco with addresses to which Cisco could ship the replacement hardware, and caused Cisco to ship via FedEx numerous pieces of Cisco computer hardware, each with a retail value of between $3,693 and $34,500, from a warehouse

in Roanoke, Texas, to addresses around the United States.

The defendant (at times alone and at times with Cage) traveled to the addresses to which they had the Cisco replacement items shipped, in order to pick up the hardware. Each time Cisco agreed to ship a "replacement" item on one of the false warranty claims initiated by the defendant or Cage, Cisco required the person initiating the warranty claim to promise to return the supposedly broken Cisco hardware that was under warranty. However, at the heart of the scheme was the fact that the warrant claims were false because the defendant and Cage did not own or possess the hardware to begin with. As such, each fraudulent claim initiated by the defendant or Cage resulted in their receipt of a "replacement" Cisco item without the return to Cisco of the supposedly broken item because neither the defendant nor Cage had ever owned those products in the first place and instead the defendant had simply obtained a valid Cisco serial number that he pretended to own. The defendant sold all of the the fraudulently-obtained Cisco computer hardware that he and Cage obtained during and in furtherance of this scheme to other companies that were in the business of purchasing and reselling computer hardware.

During and in furtherance of the scheme, the defendant caused numerous mailings to be sent by Cisco via Federal Express including some which the defendant caused to be delivered to locations in Eastern District of Pennsylvania. As to those Cisco shipments that the defendant caused to be sent to other districts, the defendant waives venue and consents that the charges may be filed and resolved in the Eastern District of Pennsylvania. Specifically, Counts Seven and Eight both charge shipments sent to other districts. The defendant expressly waives any objection to venue and consents to the filing and disposition of Counts Seven and Eight in the Eastern District of Pennsylvania.

As charged in Count Seven, on December 11, 2017, the defendant caused Cisco to ship

from Roanoke, Texas to Las Vegas, Nevada one Cisco Model # WS-C3650-48PS-E, with a retail value of $10,040, via FedEx, with tracking # 409739873439, in response to a false Cisco warranty claim that the defendant had initiated, which Cisco assigned as Cisco SR # 683596802. The defendant caused Cisco to ship this replacement piece of hardware in response to a false claim by the defendant in which he pretended to be someone else, pretended to own a broken piece of Cisco hardware that was under warranty, and promised to return the supposedly broken item to Cisco. For this claim, as with all his other false claims, the defendant created and utilized a false name and false email address and provided a legitimate serial number for a piece of Cisco hardware that he claimed to own but did not in fact own. Once Cisco shipped the replacement item, the defendant picked up the item and then sold it to a computer equipment reseller. The defendant never returned the supposedly broken item to Cisco that he claimed to own because he never owned it in the first place.

As charged in Count Eight, on January 5, 2018, the defendant caused Cisco to ship from Roanoke, Texas to San Diego, California one Cisco Model # WS-C3850-12X48U-S, with a retail value of $9,366, via FedEx, with tracking # 409739918688, in response to a false warranty claim that the defendant had initiated, which Cisco assigned as Cisco SR # 683715027. The defendant caused Cisco to ship this replacement piece of hardware in response to a false claim by the defendant in which he pretended to be someone else, pretended to own a broken piece of Cisco hardware that was under warranty, and promised to return the supposedly broken item to Cisco. The defendant created and utilized a false name and false email address and provided a legitimate serial number for a piece of Cisco hardware that he claimed to own but did not in fact own. Once Cisco shipped the replacement item, the defendant picked up the item and then sold it to a computer equipment reseller. The defendant never returned the supposedly broken item to

Cisco that he claimed to own because he never owned it in the first place.

During the time period set forth in the Superseding Indictment, the defendant operated a business that was engaged in buying and reselling computer hardware. In addition to obtaining Cisco items by fraud and reselling those items, the defendant also obtained other computer items from other sources (not Cisco) in a legitimate manner, and resold those other items to other large computer reseller companies with whom the defendant did business on a regular basis. The defendant knew that the income he obtained as a result of reselling computer equipment, whether it was equipment obtained legitimately or whether it was equipment he obtained from Cisco by fraud, was supposed to be declared on his tax returns. However, the defendant significantly underreported his income on his IRS Form 1040 tax returns for both 2015 and 2016 to the IRS, by giving his tax preparer significantly understated revenue and income amounts that the defendant claimed he obtained from his sale of computer equipment. When he provided these underreported figures to his tax preparer, the defendant did so intentionally, knowing that he had earned significantly more revenue and profits from his sale of computer equipment, and he intentionally gave his tax preparer false information in order to lower his tax liability. As a result, the defendant intentionally caused his tax preparer to prepare two false IRS Form 1040 tax returns for tax years 2015 and 2016, which the defendant caused to be filed with the IRS from Mansfield, Texas, in the Northern District of Texas, knowing that they were materially false and significantly underreported his income.

With respect to his 2015 tax return, as charged in Count Ten, on or about April 15, 2016, from Mansfield, Texas, the defendant willfully made and subscribed a United States income tax return, Form 1040, for the calendar year 2015, which was verified by a written declaration and electronic personal identification number attesting that it was made under the penalty of perjury

and filed with the Director, Internal Revenue Service Center, which the defendant did not believe to be true and correct as to every material matter, in that the return reported gross receipts of approximately $212,124, when, as the defendant then knew, he failed to report significant additional gross receipts. In fact, the defendant failed to report an additional $284,741 in gross receipts to the IRS for tax year 2015, as his true and correct gross receipts from his business of reselling computer equipment (whether obtained legitimately or by fraud) for tax year 2015 were really $496,865. As a result, the defendant's 2015 tax return, which claimed a loss of $25,091 (i.e., negative income), actually should have shown a taxable gain (i.e., positive income) of $248,953. The defendant's false 2015 tax return caused the IRS to sustain a tax loss of $86,000. The defendant's 2015 tax return was therefore materially false, the defendant knew it was materially false when he filed it, and he filed it knowingly and willfully. The defendant expressly waives any objection to venue and consents to the filing and disposition of Count Ten in the Eastern District of Pennsylvania.

V.      **PLEA AGREEMENT**

The parties have entered into a plea agreement in this case. A copy is being filed concurrently herewith.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


*Michael S. Lowe*
MICHAEL S. LOWE
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Guilty Plea Memorandum has been served by e-mail upon:

Natasha Taylor-Smith
Federal Community Defender Office
601 Walnut Street
Suite 540 West
Philadelphia, PA 19106
Natasha_Taylor-Smith@fd.org

/s/
MICHAEL S. LOWE
Assistant United States Attorney

DATED:   June 23, 2022